J-E01004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA

v.   :

RUSSELL S. SHICK   :

Appellant   :   No. 720 WDA 2018

Appeal from the Judgment of Sentence March 29, 2016
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0000785-2014

BEFORE: PANELLA, P.J., BENDER, P.J.E., GANTMAN, P.J.E., LAZARUS, J.,
       OLSON, J., KUNSELMAN, J., NICHOLS, J., MURRAY, J., and
       McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:              **FILED OCTOBER 08, 2019**

Appellant, Russell S. Shick, appeals from the judgment of sentence

entered on March 29, 2016, as made final by the denial of Appellant's

post-sentence motion on April 28, 2016. We vacate in part and remand.

**I. Introduction**

This case has a tortured procedural history. The missteps began when

the trial court[1] permitted Appellant's counsel to withdraw at the post-sentence

motion stage and then failed to adequately colloquy Appellant as to whether

---

[1] The same judge presided over the plea, post-sentence, and post-conviction
stages of Appellant's case. For convenience and ease of understanding,
throughout this memorandum we will refer to the lower court as the "trial
court," regardless of whether the court was acting at the trial, post-sentence
or post-conviction stage.

he wished to waive his right to counsel. As a result of this failing, Appellant was forced to proceed through the post-sentence motion stage *pro se* and Appellant did not file a timely direct appeal from his judgment of sentence.

In the one year after Appellant's judgment of sentence became final, Appellant filed numerous *pro se* documents that, although not captioned as petitions filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, and failed to reference the PCRA, sought relief that was only available under the PCRA. The trial court failed to recognize that these filings constituted PCRA petitions and summarily denied most of the *pro se* petitions without either appointing counsel to represent Appellant or conducting a colloquy to determine whether Appellant wished to waive his right to counsel. However, the trial court did not deny all of Appellant's timely, *pro se* PCRA petitions.

To be sure, on August 10, 2016, Appellant filed a *pro se* document where he sought relief from his judgment of sentence, based upon claims that his prior counsel was ineffective and that his constitutional rights were violated. Further, on August 17, 2016, Appellant filed a separate *pro se* document, where he repeated the claims contained in the August 10, 2016 filing. Both documents were filed within one year of the date Appellant's judgment of sentence became final and both filings sought relief that was only available under the PCRA. Therefore, both filings constitute timely, *pro se* PCRA petitions. The trial court did not deny Appellant relief on these petitions and

it did not dismiss or finally dispose of the petitions. Instead, on August 22, 2016, the trial court entered an order, which expressly declared that it **refused to rule upon** Appellant's *pro se*, August 10, 2016 filing. Further, the trial court did not enter an order relative to Appellant's separately filed, August 17, 2016 petition.

We conclude that, since the trial court expressly refused to rule upon Appellant's August 10, 2016 *pro se* PCRA petition and since the trial court did not rule upon the August 17, 2016 petition, these timely, *pro se* PCRA petitions remained pending in the trial court. These existing PCRA petitions were then properly amended by Appellant's PCRA counsel, when counsel entered his appearance and filed the amended PCRA petition on November 1, 2017. We thus conclude that the trial court possessed jurisdiction to reinstate Appellant's direct appeal rights *nunc pro tunc* and that Appellant's case is now properly before us on direct appeal.

One of the claims Appellant raises on direct appeal is that "the [trial c]ourt err[ed] in failing to appoint counsel to represent [Appellant] for purposes of litigating post-sentence motions." Appellant's Brief at 5. We conclude that this claim entitles Appellant to relief. Since the trial court permitted Appellant's counsel to withdraw at the post-sentence motion stage and then failed to colloquy Appellant as to whether he wished to waive his right to counsel, we must vacate the trial court's order that denied Appellant's

- 3 -

post-sentence motion and remand so that Appellant may file a counseled post-sentence motion.

## II. Facts and Procedural Posture

On November 30, 2015, Appellant pleaded guilty to aggravated assault.[2] During the plea colloquy, the Commonwealth summarized the factual basis for Appellant's plea:

> Pennsylvania State Police were called to George's Tavern[,] located in Dean Township[,] in the early morning hours of October 16[, 2013]. Information related at that time was that on October 15, 2013, [Appellant] had entered the tavern stating he was hunting deer with a 9-millimeter firearm. He had went outside to his vehicle and brought the firearm into the bar. He was asked to remove the firearm from the bar, which he did. He continued to stay at the establishment and drink and was told to leave numerous times.
>
> [The next day, o]n October 16th . . . [, Appellant] had left the bar again and had re-entered and stated he was in the mood to fight everybody in the bar. He was again asked to leave at that time. Eventually he did leave.
>
> [That night], three of the victims, including [R.E.,] were in the bar. As they were in the bar[,] the victims heard several pops and dropped to the floor. It was determined that at least four shots were fired at the establishment. One of the rounds did enter the establishment and struck the victim, [R.E.], in the hip and exit[ed] through his buttocks.
>
> The state police conducted an investigation. They recovered spent bullets at the scene, which were found to be 9-millimeter or similar caliber rounds. A search was then conducted of [Appellant's] vehicle. At that time a 9-millimeter semi-automatic rifle was located in his vehicle. Also in the vehicle were two spent 9-millimeter casings. . . .

---

[2] 18 Pa.C.S.A. § 2702(a)(1).

[Appellant] stated after being interviewed with state police that he had driven by George's Tavern and had fired about four times at the bar but was not trying to kill anyone, just trying to scare them at that time.

N.T. Guilty Plea Hearing, 11/30/15, at 4-6.

The trial court accepted Appellant's guilty plea and, on March 29, 2016, sentenced Appellant to serve a term of seven-and-one-half to 15 years in prison for his aggravated assault conviction. N.T. Sentencing Hearing, 3/29/16, at 49. The sentence falls within the standard range of the sentencing guidelines. *See id.*

On April 5, 2016, Appellant's counsel (hereinafter "Plea Counsel") filed a motion to withdraw his appearance. Plea Counsel averred that he was filing the motion because Appellant "wishes for [Plea Counsel] to withdraw his appearance and have the Public Defender's Office appointed to pursue post-sentencing motions and appeals." Motion to Withdraw, 4/5/16, at 2 (some capitalization omitted). Further, on April 6, 2016, Plea Counsel filed a "motion for leave to file [a] supplemental post-sentence motion [and] . . . for an extension of time to decide" the post-sentence motion (hereinafter "Appellant's Motion for Extension of Time"). In this motion, Plea Counsel averred that Appellant "made it clear that he does not want [Plea Counsel] to file post sentence motions on his behalf, however, he does want post sentence motions filed by his new counsel." Appellant's Motion for Extension of Time, 4/6/16, at 2. The motion requested that the trial court grant "leave to amend so the public defender or other appointed counsel may file post sentence

motions on [Appellant's] behalf" and an extension of time "so that new counsel may file the appropriate post sentence motions." *Id.*

On April 7, 2016, the trial court granted Appellant's request "to file a supplemental post-sentence motion within [30] days of the appointment of new counsel." Trial Court Order, 4/7/16, at 1 (some capitalization omitted).

On April 12, 2016, Plea Counsel faxed the trial court a hand-written letter from Appellant. Appellant's letter declared:

> To whom it may concern:
>
> . . .
>
> I hereby wholeheartedly do choose to withdraw my plea of guilty forthwith and announce my intention to take this case to trial. I would further ask that the Honorable Court see fit to appoint counsel to assist me in all upcoming legal issues relative to this case as I am indigent and currently incarcerated effective immediately.

Appellant's *Pro Se* Motion to Withdraw Guilty Plea, 4/13/16, at 1.

The trial court construed Appellant's letter to be a *pro se* motion to withdraw his guilty plea (hereinafter "*pro se* Motion to Withdraw Guilty Plea") and the trial court scheduled an April 28, 2016 hearing for both Plea Counsel's motion to withdraw his appearance and Appellant's *pro se* Motion to Withdraw Guilty Plea.[3] Trial Court Order, 4/13/16, at 1.

---

[3] The trial court apparently attached Appellant's *pro se* Motion to Withdraw Guilty Plea to its April 13, 2016 order.

During the April 28, 2016 hearing, the trial court first granted Plea Counsel's motion to withdraw his appearance. N.T. Hearing, 4/28/16, at 7. The trial court did not appoint another attorney to represent Appellant and the court did not conduct a colloquy to determine whether Appellant knowingly, voluntarily, and intelligently waived his right to counsel. Instead, the trial court merely asked Appellant: "is [it] your desire to proceed *pro se* or do you want more time to get new counsel?"[4] N.T. Hearing, 4/28/16, at 4-5. After Appellant declared "I think I could proceed today on my own," the trial court allowed Appellant to proceed through the remainder of the post-sentence motion hearing unrepresented.[5] ***Id.*** at 5.

The trial court denied Appellant's *pro se* Motion to Withdraw Guilty Plea on April 28, 2016. Trial Court Order, 4/28/16, at 1. Appellant did not file a

---

[4] On July 11, 2016 (or, a little more than two months after the April 28, 2016 hearing), Appellant filed a *pro se* "Motion for Leave to Proceed *In Forma Pauperis*," where Appellant asserted his indigency and requested that the trial court grant him leave to proceed *in forma pauperis*. Appellant's *Pro Se* "Motion for Leave to Proceed *In Forma Pauperis*," 7/11/16, at ¶¶ 1-2. The trial court granted Appellant leave to proceed *in forma pauperis* by order entered July 25, 2016. Trial Court Order, 7/25/16, at 1.

[5] The trial court granted Plea Counsel's motion to withdraw his appearance before the trial court considered Appellant's *pro se* Motion to Withdraw Guilty Plea. Based upon the chronology of events, we do not have a hybrid representation problem, as the trial court considered Appellant's *pro se* filing after it permitted Plea Counsel to withdraw. ***See Commonwealth v. Ellis***, 626 A.2d 1137, 1139 (Pa. 1993) ("there is no constitutional right to hybrid representation either at trial or on appeal").

timely notice of appeal from his judgment of sentence. Thus, Appellant's judgment of sentence became final on Tuesday, May 31, 2016.[6] **See** Pa.R.A.P. 903(a); 1 Pa.C.S.A. § 1908 (computation of time).

On July 28, 2016, Appellant filed a *pro se* document he titled "Notice of Appeal from Sentence."[7] In this three-page filing, Appellant requested that the trial court grant him the following relief:

> [Appellant,] being desirous to appeal from sentence hereby moves the Honorable Court to be advised of [Appellant's] intended appeal and ask that a hearing be scheduled relative to same by the Honorable Court.

Appellant's *Pro Se* "Notice of Appeal from Sentence," 7/28/16, at 2. This filing clearly sought relief under the PCRA. **See Commonwealth v. Weimer**, 756 A.2d 684 (Pa. Super. 2000) (holding that the appellant's *pro se* petition to

_____

[6] Monday, May 30, 2016 was Memorial Day.

[7] On July 11, 2016 and July 21, 2016, Appellant filed *pro se* documents entitled "Motion for Change of Venue from Judge" and "Motion for Change of Venue from District Attorney." Within these motions, Appellant claimed that the trial court judge and the district attorney have "a personal bias or prejudice against [Appellant] which would preclude [them] from presiding over [Appellant's] proceeding in a fair and impartial manner." Appellant's *Pro Se* Motion for Change of Venue from Judge, 7/11/16, at 1 (some capitalization omitted); Appellant's *Pro Se* Motion for Change of Venue from District Attorney, 7/21/16, at 1 (some capitalization omitted). Appellant requested relief in the form of "change of venue from" the judge and the district attorney.

The trial court did not consider Appellant's filings to be petitions under the PCRA and it did not appoint counsel to represent Appellant. The trial court denied Appellant's *pro se* motions on July 27, 2016. Trial Court Order, 7/27/16, at 1.

reinstate his direct appellate rights *nunc pro tunc* constitutes a PCRA petition because "the relief he sought was available under the PCRA"); ***see also Commonwealth v. Fairiror***, 809 A.2d 396, 397 (Pa. Super. 2002) (holding that, generally, "requests for reinstatement of appellate rights, including PCRA appellate rights," are PCRA petitions that "must meet the timeliness requirements of the PCRA"). However, the trial court did not consider the filing to be a PCRA petition and it did not appoint counsel to represent Appellant. Rather, on August 3, 2016, the trial court entered an order summarily denying Appellant relief. The order declares:

> upon consideration of [Appellant's] *pro se* "Notice of Appeal from Sentence," which we are construing as a request to appeal *nunc pro tunc* as a timely appeal was not perfected, is hereby ordered and directed that said request is denied.

Trial Court Order, 8/3/16, at 1 (emphasis and some capitalization omitted).

Appellant did not file a notice of appeal from this order.

What followed was a series of *pro se* filings by Appellant. Almost all of the filings sought relief under the PCRA and almost all of the filings were summarily denied by the trial court. ***See*** Appellant's *Pro Se* "Motion to Dismiss," 8/5/16, at 1-6 (Appellant claimed that he was entitled to relief from his judgment of sentence because "he was denied his guaranteed rights under" the United States and Pennsylvania Constitutions, his sentence is illegal, and Plea Counsel was ineffective); Trial Court Order, 8/11/16, at 1 (denying Appellant's *pro se* "Motion to Dismiss"); Appellant's *Pro Se* "Motion for Corrective Order," 8/17/16, at 1 (Appellant requested that the trial court

schedule a "hearing date" for his appeal from his judgment of sentence); Trial Court Order, 8/24/16, at 1 (denying Appellant's *pro se* "Motion for Corrective Order"); Appellant's *Pro Se* "*Nunc Pro Tunc* Motion for Reconsideration of Sentence," 2/9/17, at 1-6 (requesting that the trial court "reconsider its sentence"); Trial Court Order, 3/2/17, at 1 (denying Appellant's *pro se* "*Nunc Pro Tunc* Motion for Reconsideration of Sentence"); Appellant's *Pro Se* "Addendum to *Nunc Pro Tunc* Motion for Reconsideration of Sentence," 2/27/17, at 1-4 (again requesting that the trial court reconsider its sentence); Trial Court Order, 3/2/17, at 1 (denying Appellant's *pro se* "Addendum to *Nunc Pro Tunc* Motion for Reconsideration of Sentence"). Appellant did not file a notice of appeal from any of these orders.

Two of Appellant's *pro se* filings deserve special attention. First, on August 10, 2016, Appellant filed a *pro se* document entitled "Notice of Direct Appeal." Regardless of the title, this 12-page document is a petition, with numbered paragraphs, that seeks relief from Appellant's judgment of sentence. **See** Appellant's *Pro Se* "Notice of Direct Appeal," 8/10/16, at ¶¶ 1-28(Z). Specifically, the filing contains numerous claims that Plea Counsel was ineffective and that this ineffectiveness caused Appellant to enter an unknowing, involuntary, and unintelligent plea. **See id.** at ¶¶ 22(A)-(Z)(30). Further, the filing declares that Appellant was entitled to relief from his judgment of sentence because of prosecutorial misconduct and trial court error. **Id.** at ¶¶ 27(1)-(13) and 28(A)-(Z). Appellant also attached

- 10 -

a *pro se* brief to the filing, where Appellant attempted to elucidate upon his ineffective assistance of counsel claims. **See** Appellant's *Pro Se* "Brief of Appellant," 8/10/16, at 1-16.

Second, on August 17, 2016, Appellant again filed the *pro se* document he titled "Notice of Direct Appeal." The August 17, 2016 "Notice of Direct Appeal" was separately filed and is identical to Appellant's August 10, 2016 filing. **See** Appellant's *Pro Se* "Notice of Direct Appeal," 8/17/16, at ¶¶ 1-28(Z); Appellant's *Pro Se* "Brief of Appellant," 8/17/16, at 1-16.

On August 22, 2016, the trial court entered an order with respect to Appellant's "'Notice of Direct Appeal' of August 10, 2016." **See** Trial Court Order, 8/22/16, at 1 ("[b]efore the Court is [Appellant's] 'Notice of Direct Appeal' of August 10, 2016"). The trial court stated in its order that Appellant's attempt to file a direct appeal from his judgment of sentence was untimely, as Appellant did not file the notice of appeal within 30 days of the date that the trial court denied Appellant's *pro se* Motion to Withdraw Guilty Plea. **See id.** at 1-2. The trial court then expressly declared that **it would not rule upon** Appellant's August 10, 2016 "Notice of Direct Appeal." The order declares:

> this 22nd day of August, 2016, upon consideration of [Appellant's] "Notice of Direct Appeal," **we decline to render ruling** as said document is untimely, and as such, we are without jurisdiction. Further, consistent with the analysis set forth herein, this Order shall serve as notice to [Appellant] that the Court **will decline to render ruling relative to any future filings of a similar nature**. To the extent that [Appellant] timely wishes to pursue

- 11 -

Post-Conviction Collateral Relief, said petitions will be entertained.

*Id.* at 2-3 (some emphasis added) (some emphasis omitted).[8]

The trial court never ruled upon or entered an order relative to Appellant's separately filed, August 17, 2016, *pro se* "Notice of Direct Appeal."

On November 1, 2017, new counsel (hereinafter "PCRA Counsel") entered his appearance on behalf of Appellant. That same day, PCRA Counsel filed an "Amended Petition for Post-Conviction Relief" on Appellant's behalf. Amended Petition for Post-Conviction Relief (hereinafter "Amended PCRA Petition"), 11/1/17, at 1-19. Although the Amended PCRA Petition was not filed within one year of the date Appellant's judgment of sentence became final, Appellant claimed that his amended petition "relates back to [Appellant's] timely filed [*pro se* PCRA petitions] and is timely." *Id.* at ¶ 100. Further, even though Appellant believed that the trial court dismissed all of his prior, timely, *pro se* filings that sought relief under the PCRA, Appellant claimed that the trial court's failure to treat the *pro se* filings as PCRA petitions and its failure to appoint counsel "renders the current PCRA petition a timely amendment of the prior petitions." Appellant's Brief in Support of Amended PCRA Petition, 11/1/17, at 17.

_____

[8] The trial court clearly knew how to deny a petition. To be sure, the trial court expressly denied Appellant relief on most of his *pro se* filings. **See supra** at **8-10. It simply refused to render a ruling with respect to Appellant's August 10, 2016 *pro se* "Notice of Direct Appeal."

The Amended PCRA Petition raised the following claims:

a. The plea court interfered with [Appellant's] PCRA rights, his right to appeal and violated his procedural due process rights where it failed to treat his *pro se* filings as PCRA petitions and appoint him counsel to litigate said PCRA claims. . . .

b. The plea court violated [Appellant's] substantive and procedural due process rights in failing to adequately colloquy him regarding his waiver of counsel at the April 28, 2016 hearing and in failing to appoint him post-sentence motion and appellate counsel. . . .

c. The plea court interfered with [Appellant's] right to appeal where it failed to appoint counsel to litigate post-sentence motions and file a direct appeal [and Appellant] had a meritorious issue to pursue on appeal, including the failure to provide an adequate waiver of counsel colloquy. . . .

d. Plea counsel was ineffective in advising his client to plead guilty and failing to timely advise his client of the applicability of the deadly weapon used sentencing guideline enhancement, and that the sentencing guideline ranges that were applicable increased his standard range guideline by 30 to 48 months, causing [Appellant's] plea to be unknowing and unintelligent. . . .

e. Plea counsel was ineffective in failing to move to withdraw [Appellant's] guilty plea prior to sentencing on the date of sentencing where [Appellant] requested that counsel do so upon learning that the Commonwealth was seeking to apply different sentencing guidelines, and causing [Appellant] to be subject to the more stringent post-sentence withdrawal standard. . . .

f. Plea counsel was ineffective in failing to object to the prosecutor's claim that [Appellant] had fired his weapon at torso level multiple times where discovery revealed that several shots entered the building at [17 to 21] inches from the ground. . . .

g. Counsel was ineffective in failing to present [Appellant's] additional character witnesses at sentencing, who were present, and ready to testify on his behalf. . . .

h. Plea counsel was ineffective in advising his client to plead guilty and failing to litigate both the suppression motion filed herein where meritorious suppression issues existed as well as other potentially meritorious suppression issues not included in counsel's boilerplate motion. . . .

*Id.* at ¶ 105.

The trial court scheduled an evidentiary hearing on Appellant's petition and the hearing occurred on December 8, 2017 and January 22, 2018. On April 24, 2018, the trial court entered an order granting Appellant's PCRA petition in part. Specifically, the trial court reinstated Appellant's direct appeal rights *nunc pro tunc*.[9] Trial Court Order, 4/24/18, at 13. The trial court then

_____

[9] Within the trial court's Rule 1925(a) opinion, the trial court remarks that its April 24, 2018 order "permitted a *nunc pro tunc* appeal, limited to the issue of the propriety of [the trial court's] April 28, 2016 denial of [Appellant's] *pro se* Motion to Withdraw Guilty Plea." Trial Court Opinion, 6/19/18, at 1. We do not view the trial court's April 24, 2018 order as limiting the scope of Appellant's direct appeal rights in any manner. To be sure, the April 24, 2018 order does not declare that Appellant's *nunc pro tunc* appeal rights were to be "limited." Rather, the order simply states: "[Appellant's] appellate rights relative to our Opinion of April 28, 2016 wherein we denied his *pro se* Motion to Withdraw Guilty Plea are REINSTATED forthwith *nunc pro tunc*." Trial Court Order, 4/24/18, at 1. Given that the denial of Appellant's *pro se* Motion to Withdraw Guilty Plea finalized Appellant's judgment of sentence, the *nunc pro tunc* reinstatement of Appellant's direct appeal rights "relative" to the "Opinion" explaining the denial of Appellant's *pro se* Motion to Withdraw Guilty Plea does nothing less than reinstate Appellant's entire direct appeal rights *nunc pro tunc*. **See Youst v. Keck's Food Serv., Inc.**, 94 A.3d 1057, 1079 (Pa. Super. 2014) (stating that, generally, "a trial court can only speak through its orders – and that any reasoning contained in a Rule 1925(a) opinion is advisory, and for the benefit of [the Superior] Court only").

- 14 -

declared that it would not decide Appellant's remaining ineffective assistance of counsel claims, as Appellant's case was now on direct appeal. ***See*** Trial Court Opinion, 4/24/18, at 11; Trial Court Order, 4/24/18, at 1.

On May 3, 2018, Appellant filed a "Motion to Waive PCRA Rights so as to Raise Ineffectiveness Claims on Direct Appeal" (hereinafter "Appellant's Motion to Waive PCRA Rights"). Appellant requested that the trial court allow him to "relinquish his statutory right to PCRA review so that he may present the ineffectiveness claims he raised and developed at his PCRA hearings in his reinstated direct appeal, along with his issue concerning his request to withdraw his guilty plea." Appellant's Motion to Waive PCRA Rights, 5/3/18, at 5-6.

The trial court denied Appellant's Motion to Waive PCRA Rights on May 9, 2018. On May 14, 2018, Appellant filed a timely notice of appeal from his judgment of sentence. Appellant's Notice of Appeal, 5/14/18, at 1. Appellant raises the following claims on appeal:[10, 11]

> [1.] Whether the [trial] court properly construed [Appellant's] first counseled PCRA petition as timely pursuant to ***Commonwealth v. Williams***, 828 A.2d 981 (Pa. 2003), ***Commonwealth v. Tedford***, 781 A.2d 1167 (Pa. 2001), and ***Commonwealth v. Duffey***, 713 A.2d 63 (Pa. 1998), and

---

[10] On March 15, 2019, this Court granted *en banc* reargument in this case and, in the order granting reargument, we permitted Appellant to file a supplemental brief. Order, 3/15/19, at 1. Our recitation of Appellant's issues combines the claims Appellant raised in his original and supplemental briefs.

[11] For ease of discussion, we have renumbered Appellant's claims on appeal.

correctly reinstated [Appellant's] direct appeal rights where its prior dismissals of [Appellant's] *pro se* filings, without the appointment of PCRA counsel, were in error and were legal nullities?

[2.] In the alternative, is application of the PCRA time-bar unconstitutional as applied where [Appellant] was deprived of his due process rights based on errors made by the . . . [trial] court which failed to appoint him counsel to file a direct appeal and repeatedly failed to appoint PCRA counsel and did not properly treat timely filed PCRA petitions as PCRA petitions?

[3.] Did the . . . [trial] court's actions constitute a breakdown in the judicial system warranting reinstatement of [Appellant's] direct appeal rights?

[4.] Did the [trial] court err in failing to appoint counsel to represent [Appellant] for purposes of litigating post-sentence motions and a direct appeal and its colloquy was deficient, thereby rendering the waiver doctrine inapplicable to his failure to file post-sentence motions challenging his sentence?

[5.] Did the [trial] court err in declining to grant [Appellant's] request to withdraw his guilty plea where it was not knowingly, voluntarily, and intelligently entered and he was legally innocent of the charge to which he pled guilty as he did not have the requisite *mens rea* and the victim did not suffer serious bodily injury?

[6.] Whether [Appellant's] sentence was grossly disproportionate to other sentences imposed in Cambria County for the same or similar offenses where [Appellant] suffered from health problems, is disabled, and a military veteran?

[7.] The [PCRA] court erred in declining to conduct a PCRA waiver colloquy to allow [Appellant] to raise and litigate ineffective assistance of counsel claims on direct appeal where [Appellant] already developed an adequate record at two separate PCRA hearings and good cause and/or exceptional circumstances exist to allow [Appellant] to pursue the following ineffectiveness claims on direct appeal:

[a.] Whether plea counsel was ineffective in advising his client to plead guilty and failing to timely advise his client of the applicability of the deadly weapon used sentencing guideline enhancement, and that the sentencing guideline ranges that were applicable increased his standard range guideline by 30 to 48 months, causing [Appellant's] plea to be unknowing and unintelligent?

[b.] Plea counsel was ineffective in failing to move to withdraw [Appellant's] guilty plea prior to sentencing on the date of sentencing where [Appellant] requested that counsel do so upon learning that the Commonwealth was seeking to apply different sentencing guidelines, and causing [Appellant] to be subject to the more stringent post-sentence withdrawal standard.

[c.] Plea counsel was ineffective in failing to object to the prosecutor's claim that [Appellant] had fired his weapon at torso level multiple times where discovery revealed that several shots entered the building at [17] to [21] inches from the ground.

[d.] Counsel was ineffective in failing to present [Appellant's] additional character witnesses at sentencing, who were present, and ready to testify on his behalf.

[e.] Plea counsel was ineffective in advising his client to plead guilty and failing to litigate both the suppression motion filed herein where meritorious suppression issues existed as well as other potentially meritorious suppression issues not included in counsel's boilerplate motion.

Appellant's Brief at 5-7 (some capitalization omitted); Appellant's Supplemental Brief at i.

### III. Analysis

In Appellant's first three claims on appeal, Appellant contends that the trial court properly concluded that it had jurisdiction to grant him relief under

the PCRA.  *See* Appellant's Supplemental Brief at i.  Conversely, the Commonwealth claims that the trial court did not have jurisdiction to rule upon the merits of the PCRA petition and that we should either quash or dismiss this appeal.  *See* Commonwealth's Brief at 18.  We conclude that the trial court possessed jurisdiction to grant Appellant post-conviction collateral relief.

At the outset, although this case is on direct appeal following the *nunc pro tunc* restoration of Appellant's direct appellate rights, we must first consider whether the trial court had jurisdiction to grant Appellant post-conviction collateral relief in the form of the reinstatement of his direct appeal rights.  We explain.

This Court has held it "well settled that a judgment or decree rendered by a court which lacks jurisdiction of the subject matter or of the person is null and void."  ***Commonwealth v. Schmotzer***, 831 A.2d 689, 695 n.2 (Pa. Super. 2003); ***see also Comm. ex rel. Penland v. Ashe***, 19 A.2d 464, 466 (Pa. 1941) ("every judgment is void, which clearly appears on its own face to have been pronounced by a court having no jurisdiction or authority in the subject-matter").  A void judgment is "no judgment at all."  ***Ashe***, 19 A.2d at 466.  Thus, our Supreme Court has held, "it is the duty of the court of its own motion to strike off [a void judgment] whenever its attention is called to it."  ***Romberger v. Romberger***, 139 A. 159, 160 (Pa. 1927).

Moreover, the PCRA contains a jurisdictional time-bar, which is subject to limited statutory exceptions.  This time-bar demands that "any PCRA

petition, including a second or subsequent petition, [] be filed within one year of the date that the petitioner's judgment of sentence becomes final, unless [the] petitioner pleads [and] proves that one of the [three] exceptions to the timeliness requirement . . . is applicable." *Commonwealth v. McKeever*, 947 A.2d 782, 785 (Pa. Super. 2008); 42 Pa.C.S.A. § 9545(b). Our Supreme Court has explained:

> the PCRA timeliness requirements are jurisdictional in nature and, accordingly, a PCRA court is precluded from considering untimely PCRA petitions. *See*, *e.g.*, . . . *Commonwealth v. Fahy*, 737 A.2d 214, 220 (Pa. 1999) (holding that where a petitioner fails to satisfy the PCRA time requirements, [the Pennsylvania Supreme] Court has no jurisdiction to entertain the petition). [The Pennsylvania Supreme Court has] also held that even where the PCRA court does not address the applicability of the PCRA timing mandate, th[e Pennsylvania Supreme Court would] consider the issue *sua sponte*, as it is a threshold question implicating our subject matter jurisdiction and ability to grant the requested relief.

*Commonwealth v. Whitney*, 817 A.2d 473, 475–476 (Pa. 2003); *see also Commonwealth v. Jackson*, 30 A.3d 516, 523 (Pa. Super. 2011) (holding that, since the PCRA's time-bar implicates the subject matter jurisdiction of our courts, "courts are without jurisdiction to offer any form of relief . . . beyond th[e jurisdictional] time-period") (some capitalization omitted).

Hence, in this case, we must initially determine whether Appellant's PCRA petition was timely. This is because, if the petition were not timely, the trial court would not have had subject matter jurisdiction over Appellant's PCRA petition, the trial court's *nunc pro tunc* restoration of Appellant's direct appellate rights would be "null and void," and we would not have jurisdiction

to consider the merits of any claim on direct appeal. **See Schmotzer**, 831 A.2d at 695 n.2.

The trial court sentenced Appellant on March 29, 2016. After granting Appellant an extension of time to file his post-sentence motion and after considering Appellant's *pro se* Motion to Withdraw Guilty Plea, the trial court denied Appellant's motion on April 28, 2016. As explained above, since Appellant did not file a timely, direct appeal from his judgment of sentence, Appellant's judgment of sentence became final on May 31, 2016. **See supra** at *7-8. Appellant then had until May 31, 2017 to file a timely petition under the PCRA. **See** 42 Pa.C.S.A. § 9545(b)(1).

As noted above, in the one year after Appellant's judgment of sentence became final (and while Appellant was no longer represented by counsel), Appellant filed multiple *pro se* documents where he sought relief from his judgment of sentence, based upon claims that Plea Counsel was ineffective or that his constitutional rights were violated. These filings constitute timely PCRA petitions, as they were filed within one year of the date Appellant's judgment of sentence became final and they raised claims that were cognizable under the PCRA.[12] **See** 42 Pa.C.S.A. § 9542 (the PCRA "is the sole

---

[12] Amongst the claims encompassed by the PCRA are claims that the petitioner's "conviction or sentence resulted from:" "[a] violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence

means of obtaining collateral relief and encompasses all other common law and statutory remedies . . . including *habeas corpus* and *coram nobis*"); *Commonwealth v. West*, 938 A.2d 1034, 1043 (Pa. 2007) ("[t]he PCRA subsumes all forms of collateral relief, including *habeas corpus*, to the extent a remedy is available under such enactment"); *Commonwealth v. Descardes*, 136 A.3d 493, 501 (Pa. 2016) ("the language of the PCRA clearly requires that an individual seeking relief from the judgment of sentence itself . . . pursue his request for relief through the PCRA. . . . [Further, the Pennsylvania Supreme Court] has consistently held that, pursuant to the plain language of Section 9542, where a claim is cognizable under the PCRA, the PCRA is the only method of obtaining collateral review").

As such, regardless of the way the *pro se* Appellant titled these filings, the trial court should have *sua sponte* treated the filings as PCRA petitions. *Commonwealth v. Johnson*, 803 A.2d 1291, 1293 (Pa. Super. 2002) ("the PCRA provides the sole means for obtaining collateral review, and [] any petition filed after the judgment of sentence becomes final will be treated as a PCRA petition"); *Commonwealth v. Kutnyak*, 781 A.2d 1259, 1261 (Pa. Super. 2001) (holding: "[a]ppellant's *pro se* petition, entitled "Notice of

---

could have taken place" and "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. §§ 9543(a)(2)(i) and (ii).

Post-Sentence Motion Challenging Validity of Guilty Plea to Permit Withdrawal, *Nunc Pro Tunc*," must be treated as a PCRA petition, since the PCRA is the exclusive vehicle for obtaining post-conviction collateral relief. This is true regardless of the manner in which the petition is titled") (citation omitted).

Unfortunately, the trial court was late in recognizing that most of Appellant's timely *pro se* filings sought relief under the PCRA – and, thus, that it should have considered the filings to be PCRA petitions. As a result, the trial court denied most of Appellant's PCRA petitions without either appointing counsel to represent Appellant or, at least, conducting a proper colloquy to determine whether Appellant wished to waive his right to counsel.[13] This was clear error. Certainly, as we have explained, "it is undisputed that first time PCRA petitioners have a rule-based right to counsel." **Commonwealth v. Figueroa**, 29 A.3d 1177, 1180 n.6 (Pa. Super. 2011). This right to counsel "exists throughout the post-conviction proceedings, including any appeal from [the] disposition of the petition for post-conviction relief." **Commonwealth v. Quail**, 729 A.2d 571, 573 (Pa. Super. 1999) (citations and quotations omitted); **see also** Pa.R.Crim.P. 904(A) and (C). Further, our Supreme Court has held, "[w]hen a waiver of the right to counsel is sought at the post-conviction and appellate stages, an on-the-record determination should

---

[13] The trial court afforded Appellant *in forma pauperis* status throughout the entire time Appellant was filing his *pro se* PCRA petitions. Trial Court Order, 7/25/16, at 1.

be made that the waiver is a knowing, intelligent, and voluntary one." ***Commonwealth v. Grazier***, 713 A.2d 81, 82 (Pa. 1998).

Nevertheless, the trial court did not deny all of Appellant's timely *pro se* PCRA petitions. Rather, as explained above, on August 10, 2016 and August 17, 2016, Appellant filed separate *pro se* documents entitled "Notice of Direct Appeal" and, in these filings, Appellant claimed that he was entitled to relief from his judgment of sentence because Plea Counsel was ineffective and both the trial court and the Commonwealth violated his constitutional rights. **See** Appellant's *Pro Se* "Notice of Direct Appeal," 8/10/16, at ¶¶ 1-28(Z); Appellant's *Pro Se* "Notice of Direct Appeal," 8/17/16, at ¶¶ 1-28(Z). Since these *pro se* filings sought relief from Appellant's judgment of sentence based upon claims that are cognizable under the PCRA, the filings constitute PCRA petitions. **See Descardes**, 136 A.3d at 503 ("where a petitioner's claim is cognizable under the PCRA, the PCRA is the only method of obtaining collateral review"). Moreover, Appellant filed the *pro se* PCRA petitions within one year of the date his judgment of sentence became final. The filings are thus timely under the PCRA.

As noted above, while the trial court failed to consider Appellant's August 10, 2016 "Notice of Direct Appeal" to be a PCRA petition, the trial court did not dismiss or dispose of the petition and the trial court did not deny Appellant relief. Instead, the trial court took the unusual step of entering an

order where it expressly declared that **it would not rule upon** the August 10, 2016 "Notice of Direct Appeal." Again, the trial court's order declared:

> this 22nd day of August, 2016, upon consideration of [Appellant's] "Notice of Direct Appeal," **we decline to render ruling** as said document is untimely, and as such, we are without jurisdiction. Further, consistent with the analysis set forth herein, this Order shall serve as notice to [Appellant] that the Court **will decline to render ruling relative to any future filings of a similar nature**. To the extent that [Appellant] timely wishes to pursue Post-Conviction Collateral Relief, said petitions will be entertained.

Trial Court Order, 8/22/16, at 2-3 (some emphasis added) (some original emphasis omitted).

Regardless of the reasons why the trial court believed it proper to "decline to render ruling" upon the August 10, 2016 "Notice of Direct Appeal," the simple fact remains that the trial court expressly refused to rule upon Appellant's August 10, 2016 "Notice of Direct Appeal" and, thus, the filing remained extant.[14] Further, and consistent with the trial court's warning to

_____

[14] The dissent claims that the trial court's August 22, 2016 order "denied Appellant the relief he requested" and "finally dispos[ed] of" Appellant's August 10, 2016 petition. Dissenting Memorandum, at *4. The dissent then cites precedent, which merely holds that an order **dismissing** a petition for lack of jurisdiction is a final, appealable order. **See id.**, citing **Commonwealth v. Anderson**, 630 A.2d 47, 49 n.9 (Pa. Super. 1993) (holding that, where the trial court **dismissed** all charges against the defendant for lack of subject matter jurisdiction, the order was final); **Bergere v. Bergere**, 527 A.2d 171, 172 (Pa. Super. 1987) (holding: where the trial court **dismissed** wife's petition for lack of personal jurisdiction, the order was final). In the case at bar, however, the trial court's August 22, 2016 order did not "deny" Appellant relief and the order did not "dismiss" or "dispose" of Appellant's August 10, 2016 petition. Instead, by the plain language of the

Appellant that it would "decline to render ruling relative to any future filings of a similar nature," the trial court did not enter any order with respect to Appellant's August 17, 2016 *pro se* petition.[15] **See** Trial Court Order, 8/22/16,

---

trial court's order, the trial court declared that it was refusing to even rule upon Appellant's petition. And, in the absence of a ruling on the petition, the petition remained unresolved.

[15] The dissent characterizes Appellant's August 17, 2016 "Notice of Direct Appeal" as merely an exhibit to Appellant's "Motion for Corrective Order." **See** Dissenting Memorandum, at *5. This is incorrect. Appellant's *pro se*, August 17, 2016 "Motion for Corrective Order" declares:

MOTION FOR CORRECTIVE ORDER

AND NOW COMES [Appellant], Pro Se, [] with the following MOTION FOR CORRECTIVE ORDER and offers the Honorable Court the following in support:

(A) Appellant filed a timely NOTICE OF APPEAL with the [trial] court.

(B) [The trial court judge] DENIED said motion as being untimely on August 3, 2016 and issued an Order of Court stating same.

(C) Appellant had filed an Omnibus Post-Sentence Motion with the [trial] court on or about April 6, 2016. Said motion was granted by the [trial court]. Said motion gave [Appellant] an additional 120 days for filing of post-conviction motions due to the fact that [Appellant's] private counsel had previously filed.

WHEREFORE, [Appellant] MOVES the [trial] court to issue a CORRECTIVE ORDER and accept [Appellant's] Notice of Appeal and set a hearing date for aforementioned appeal.

Appellant's *Pro Se* "Motion for Corrective Order," 8/17/16, at 1 (some capitalization omitted) (emphasis in original).

- 25 -

_____

There are several reasons why Appellant's August 17, 2016 "Notice of Direct Appeal" cannot be characterized as an exhibit to the "Motion for Corrective Order." First, Appellant's "Motion for Corrective Order" does not state that it has any attached exhibits and the "Notice of Direct Appeal" is not labeled as an exhibit to anything. **See id.** Second, the "Motion for Corrective Order" does not even reference the "Notice of Direct Appeal." Instead, the "Motion for Corrective Order" references two filings: a "Notice of Appeal" (that Appellant filed on July 28, 2016 and the trial court denied on August 3, 2016) and an "Omnibus Post-Sentence Motion" (that the trial court accepted on April 13, 2016 and denied on April 28, 2016). **Id.**; **see also supra**, at *8 (reproducing Appellant's *pro se*, July 28, 2016 "Notice of Appeal from Sentence"). Third, Appellant attached a "Certificate of Good Faith" and a "Certificate of Service" to **both** his August 17, 2016 "Motion for Corrective Order" as well as his August 17, 2016 "Notice of Direct Appeal," thus indicating separate filings. Fourth, the record includes an apparent cover letter to Appellant's August 17, 2016 filings. This cover letter, which the Cambria County Clerk of Courts time-stamped August 17, 2016, declares:

> August 11, 2016
>
> Ms. Susan Kuhar
> Clerk of Courts
> Cambria County Courthouse
> 200 S. Center Street
> Ebensburg, PA 15931
>
> Ms. Kuhar:
>
> Enclosed, please find a Motion for Corrective Order to be [filed]. The [trial court] erred in denying my Notice of Appeal and although I wrote him a letter in reference to same I felt obligated to formally broach this mistake. **Also, you will find my Notice of Direct Appeal and Brief in support of same**.
>
> As always, I would request a time stamped [copy] of **these instruments** be returned to me because in my current situation, copies are nearly impossible to produce. Thank you!

at 2-3 (emphasis added). The *pro se* PCRA petitions were, thus, still in

existence when counsel entered his appearance and filed the Amended PCRA

_____

                                        /s
                                        Russell S. Shick, Pro Se
                                        Appellant

Appellant's Cover Letter to Clerk of Courts Kuhar, 8/17/16, at 1 (emphasis added).

The language in Appellant's cover letter further supports the conclusion that the August 17, 2016 "Notice of Direct Appeal" was not an exhibit to the "Motion for Corrective Order," but was, rather, a separate filing.

Finally, and perhaps most importantly, the Cambria County Clerk of Courts separately time-stamped Appellant's August 17, 2016 "Notice of Direct Appeal." This separate time-stamp is further evidence that the August 17, 2016 "Notice of Direct Appeal" was separately filed and was not, as the dissent declares, a mere exhibit to the "Motion for Corrective Order." ***See*** Pa.R.Crim.P. 903 ("[u]pon receipt of a petition for post-conviction collateral relief, the clerk of courts promptly shall time stamp the petition with the date of receipt and make a docket entry, at the same term and number as the underlying conviction and sentence, reflecting the date of receipt, and promptly shall place the petition in the criminal case file") (emphasis added); ***see also S.E. Pa. Transp. Auth. v. DiAntonio***, 618 A.2d 1182, 1184 (Pa. Cmwlth. 1992) (holding: "the prothonotary accepted [the defendant's] answer by time-stamping a copy. These actions constitute 'filing'"); ***Commonwealth v. Little***, 716 A.2d 1287, 1288 (Pa. Super. 1998) ("[t]he prisoner mailbox rule provides that the date of delivery of the PCRA petition by the defendant to the proper prison authority or to a prison mailbox is considered the date of filing of the petition"). We note that, even though the clerk of courts separately time-stamped Appellant's August 17, 2016 "Notice of Direct Appeal," the clerk of courts failed to make a separate docket entry for the filing. ***See*** Pa.R.Crim.P. 903. Nevertheless, Appellant cannot be faulted for this failure, as he has no control over the clerk of court's actions. ***Commonwealth v. Castro***, 766 A.2d 1283, 1287 (Pa. Super. 2001) ("the failure to docket the arrival of the petition does not control the determination of whether or not Appellant's petition was timely 'filed'") (emphasis omitted).

Petition. As such, the Amended PCRA Petition constitutes "an extension of [the] existing[, August 10, 2016 and August 17, 2016] petition[s] rather than a new and distinct petition."[16] *Tedford*, 781 A.2d at 1171 n.6. Appellant's

_____

[16] Prior to Appellant's August 10, 2016 filing, Appellant filed two earlier *pro se* documents that sought relief under the PCRA and were, therefore, PCRA petitions. *See* Appellant's *Pro Se* "Notice of Appeal from Sentence," 7/28/16, at 1-3; Appellant's *Pro Se* "Motion to Dismiss," 8/5/16, at 1-6.

The trial court erroneously failed to consider the two earlier filings to be PCRA petitions and it summarily dismissed the petitions without providing Appellant with his rule-based right to counsel. Given this failure, Appellant's surviving, August 10, 2016 "Notice of Direct Appeal" constitutes Appellant's first PCRA petition. *See Commonwealth v. Tedford*, 781 A.2d 1167 (Pa. 2001) (holding that, where the PCRA court erroneously dismissed the petitioner's *pro se* PCRA petition instead of directing that the petitioner's attorney file an amended petition, the Supreme Court would treat the later, counseled PCRA petition as a first PCRA petition; the *Tedford* Court then held that the counseled petition was timely under the one-year grace period for first-time PCRA petitions, which was contained in the 1995 amendments to the PCRA, because the petitioner's "sentence became final . . . before the effective date of the [1995 amendments to the] PCRA" and the petitioner filed the counseled PCRA petition on January 16, 1996, which was "within a year of the effective date of the amendments"); *see also Commonwealth v. Williams*, 828 A.2d 981, 990-991 (Pa. 2003) ("when [the petitioner] filed his *pro se* [PCRA] petition he was entitled to the advice of counsel and if he withdrew that petition before the appointment of counsel [and before a judicial ruling on the motion to withdraw the petition], then his second petition should be treated as a first petition *nunc pro tunc*").

petition is, therefore, timely under the PCRA.[17, 18]  As such, the trial court had

jurisdiction to grant Appellant post-conviction collateral relief in the form of

---

[17] The trial court and the parties mistakenly believe that the trial court dismissed all of Appellant's *pro se* filings.  **See** Appellant's Supplemental Brief at 1-25; Commonwealth's Brief at 6-7 and 10-21; Trial Court Opinion, 4/24/18, at 3-5.  Further, on appeal, Appellant essentially requested that this Court uphold the trial court's ruling based on an application of the "amendment theory" (which is a theory that our Supreme Court has explicitly rejected) or by creating an equitable exception to the PCRA's one-year time-bar (which we have no authority to realize).  **See** Appellant's Supplemental Brief at 1-12; **Commonwealth v. Rienzi**, 827 A.2d 369 (Pa. 2003) (holding that the Superior Court erred in attempting "to circumvent the PCRA time-bar by treating [a] second PCRA petition as an amendment to [a timely, but withdrawn,] first petition, where . . . the second petition was filed after the expiration of the PCRA filing deadline"); **Commonwealth v. Eller**, 807 A.2d 838, 845 (Pa. 2002) ("[t]he PCRA confers no authority upon [the Pennsylvania Supreme] Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar in addition to those exceptions expressly delineated in the Act.  In this regard, we note that [the Supreme] Court already has held that the PCRA's time restrictions are not subject to equitable tolling"); **see also Commonwealth v. Robinson**, 837 A.2d 1157, 1158-1162 (Pa. 2003) (rejecting the Superior Court's "extension theory," which "construe[d] an untimely, serial PCRA petition as if it were an 'extension' of a timely, but previously dismissed, first PCRA petition in cases where an appeal was taken from the denial of the first petition, but the Superior Court ultimately dismissed the appeal when the PCRA appellant failed to file a brief;" the **Robinson** Court held that "the Superior Court's innovation of this non-textual exception to the PCRA's time requirement [was] clearly erroneous" and further held that "the Superior Court's 'extension' theory ignores bedrock principles of finality.  Once a PCRA petition has been decided and the ruling on it has become final, there is nothing for a subsequent petition or pleading to 'extend.'  Far from continuing into perpetuity, the trial court's jurisdiction over a matter generally ends once an appeal is taken from a final order or, if no appeal is taken, thirty days elapse after the final order").

Nevertheless, "we may affirm a PCRA court's decision on any grounds if the record supports it."  **Commonwealth v. Benner**, 147 A.3d 915, 919 (Pa. Super. 2016) (quotations and citations omitted).  Since Appellant's August 10, 2016 and August 17, 2016 *pro se* filings, entitled "Notice of Direct Appeal,"

the *nunc pro tunc* restoration of Appellant's direct appeal rights and we have jurisdiction over the current, direct appeal from Appellant's judgment of sentence.[19]

_____

were timely, *pro se* PCRA petitions, which were never dismissed (or even ruled upon) by the trial court, the counseled, November 1, 2017 Amended PCRA Petition was also timely, as the Amended PCRA Petition was "an extension of [the] **existing**[, August 10, 2016 and August 17, 2016] petition[s]." ***Tedford***, 781 A.2d at 1171 (emphasis added).

[18] The dissent finds comfort in the fact that the parties and the trial court believe that the trial court dismissed every one of Appellant's *pro se* filings. Dissenting Memorandum, at *5-6. However, as noted above, the trial court and the parties were mistaken in their belief that the trial court dismissed all of Appellant's *pro se* filings – and we are not bound by their mistaken beliefs. ***See Smith v. Mason***, 476 A.2d 1347, 1349 (Pa. Super. 1984) ("[a]lthough the trial judge characterized his order as an order of civil contempt, we are not bound by this characterization. It is clear from the circumstances surrounding the entry of the order that it was an order of criminal contempt"); ***Benner***, 147 A.3d at 919 ("we may affirm a PCRA court's decision on any grounds if the record supports it") (quotations and citations omitted).

[19] The Commonwealth claims that the counseled, November 1, 2017 Amended PCRA Petition was invalid because the trial court did not authorize the amendment to Appellant's *pro se* PCRA petition. Commonwealth's Brief at 13-14. The Commonwealth's claim is meritless for several reasons, the most important being that the trial court, in fact, expressly authorized the amendment. Trial Court Opinion, 4/24/18, at 7 (the trial court specifically rejected the Commonwealth's claim that "[Appellant] did not request and receive permission to amend [the] PCRA petition" and declared that "justice compels providing [Appellant] an opportunity to pursue his counseled PCRA [p]etition"); ***see also*** Pa.R.Crim.P. 905(A) ("[t]he judge may grant leave to amend or withdraw a petition for post-conviction collateral relief at any time. Amendment shall be freely allowed to achieve substantial justice"); ***Commonwealth v. Cherry***, 155 A.3d 1080 ("[petitioners] have a general rule-based right to the assistance of counsel for their first PCRA Petition. . . . [C]ounsel's duty is to either (1) amend the petitioner's *pro se* Petition and present the petitioner's claims in acceptable legal terms, or (2) certify that the claims lack merit by complying with the mandates of [***Commonwealth v.***

- 30 -

Appellant's first substantive claim contends that the trial court erred when it deprived him of his right to counsel at the post-sentence motion stage. Appellant's Brief at 33-39. We agree. We thus vacate the trial court's April 28, 2016 order, which denied Appellant's *pro se* Motion to Withdraw Guilty Plea, and remand for further proceedings.

At the very least, defendants have a rule-based right to the assistance of counsel at the post-sentence motion stage. Pa.R.Crim.P. 704(C)(3) (declaring that the defendant has "the right to assistance of counsel in the preparation of the [post-sentence] motion"). In order to waive this right to counsel, the trial court judge must "ensure that the defendant's wavier of the right to counsel is knowing, voluntary, and intelligent." Pa.R.Crim.P. 121(A)(2) and (C). To do so, the judge must, "at a minimum," elicit certain, specified information from the defendant. Pa.R.Crim.P. 121(A)(2). Tailored to the post-sentence motion stage of the proceedings, this inquiry includes: "that the defendant understands that he [] has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is

---

***Turner***, 544 A.2d 927 (Pa. 1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).] If appointed counsel fails to take either of these steps, our courts have not hesitated to find that the petition was effectively uncounseled") (footnote, quotations, and some citations omitted); ***Commonwealth v. Brown***, 141 A.3d 491, 503-504 (Pa. Super. 2016) ("when a petitioner files supplemental materials to a PCRA petition, and the PCRA court considers such materials, an attempt by the Commonwealth to preclude consideration of such materials fails").

indigent;" "that the defendant understands that if he [] waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;" "that the defendant understands [] there are possible defenses [or claims] to these charges[, convictions, and sentence] that counsel might be aware of, and if these defenses [or claims] are not raised [in the post-sentence motion], they may be lost permanently;" and, "that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently."[20]   *See* Pa.R.Crim.P. 121(A)(2)(a), (d), (e), and (f); *c.f.* *Commonwealth v. Robinson*, 970 A.2d 455, 458-460 (Pa. Super. 2009) (*en banc*) (holding that, even though not all of the provisions contained in Rule

---

[20] As we have also held:

> In addition to the Rule 121(A) factors, a waiver colloquy must, of course, always contain a clear demonstration of the defendant's ability to understand the questions posed to him during the colloquy. . . .  The court should also inquire about the defendant's age, educational background, and basic comprehension skills.  The trial judge need not literally be the one to pose the questions to the defendant, but the text of Rule 121(C) requires the judge to ascertain the quality of the defendant's waiver.

*Commonwealth v. Phillips*, 93 A.3d 847, 852-853 (Pa. Super. 2014) (quotations, citations, and emphasis omitted).

121(A)(2) are germane at the PCRA stage, the PCRA court must explain the relevant Rule 121(A)(2) provisions to any petitioner who seeks to waive his rule-based right to counsel and must tailor the provisions to the context).

In the case at bar, the trial court permitted Appellant's counsel to withdraw at the post-sentence motion stage. As explained above, the trial court did not appoint another attorney to represent Appellant and the court did not conduct the necessary colloquy to determine whether Appellant knowingly, voluntarily, and intelligently waived his right to counsel. Instead, the trial court simply asked Appellant: "is [it] your desire to proceed *pro se* or do you want more time to get new counsel?" N.T. Hearing, 4/28/16, at 4-5. And, after Appellant told the court "I think I could proceed today on my own," the trial court allowed Appellant to proceed through the entirety of the post-sentence motion stage – including the filing of the motion – *pro se*. This was erroneous.

Further, since some of Appellant's claims on appeal require development through the post-sentence motion procedure or elucidation from the trial court, we must vacate the trial court's April 28, 2016 order, which denied Appellant's *pro se* Motion to Withdraw Guilty Plea, and remand for the filing *nunc pro tunc* of a counseled post-sentence motion.[21] **See** Pa.R.Crim.P.

_____

[21] Appellant appears to believe that we can reach the merits of his challenge to the guilty plea, his claim regarding the discretionary aspects of his sentence, and his claim that his sentence was "grossly disproportionate" to

720(B)(1)(a)(i) and (v); *see also Commonwealth v. D'Collanfield*, 805 A.2d 1244, 1246 (Pa. Super. 2002) (to preserve an issue related to a guilty plea, the defendant must "object[] at the sentence colloquy or otherwise rais[e] the issue at the sentencing hearing or through a post-sentence motion"); *Commonwealth v. Yockey*, 158 A.3d 1246, 1259 (Pa. Super. 2017) (to preserve a challenge to the discretionary aspects of a sentence, the defendant must raise the claim at sentencing or in a post-sentence motion).

---

his crime.  *See* Appellant's Brief at 25-44; *see also Commonwealth v. Corley*, 31 A.3d 293, 297-298 (Pa. Super. 2011) (holding that, since the defendant was denied his right to counsel at the post-sentence motion stage, we would not consider his challenge to the discretionary aspects of his sentence waived; further, we held that we would consider the issue on appeal because "the purpose behind a post-sentence motion has been satisfied herein. . . . [Specifically, the] trial court already had an opportunity to modify Appellant's sentence prior to the first appeal and did so. Moreover, we have the benefit of the trial court's reasoning in imposing [a]ppellant's sentence as the court addressed this at length in its Rule 1925(b) opinions").  However, even if we were to apply the principles of relaxed waiver allowed by *Corley*, we cannot reach the merits of Appellant's claims because:  the trial court erroneously allowed Appellant to litigate his post-sentence motion *pro se* and none of Appellant's claims were adequately raised in the *pro se* motion or developed at the hearing; the trial court did not adequately address Appellant's concerns and claims regarding the challenge to his guilty plea; the trial court provided us with very little explanation as to the reasons why it imposed a seven-and-one-half to 15 year sentence; and, Appellant's claim that his sentence is "grossly disproportionate to the crime" hinges upon facts and allegations that are not contained in the current record or ruled upon by the trial court, including Appellant's allegation that the victim merely "suffered a flesh wound from a ricocheted bullet."  *See* Trial Court Opinion, 4/28/16, at 1-6; Trial Court Opinion, 6/19/18, at 1-3; Appellant's Brief at 39-44.  Thus, "the purpose behind [the] post-sentence motion" has not been satisfied in this case and we may not reach the merits of Appellant's substantive claims.  *See Corley*, 31 A.3d at 297.

Given our disposition, Appellant's claims that the trial court erred when it denied his *pro se* Motion to Withdraw Guilty Plea, imposed a manifestly excessive sentence, and imposed a sentence that was "grossly disproportionate" to his crime are moot. Appellant may raise these issues in his counseled post-sentence motion.

Finally, Appellant claims that the trial court erred when it denied his Motion to Waive PCRA Rights. In this motion, Appellant requested that the trial court allow him to "relinquish his statutory right to PCRA review so that he may present the ineffectiveness claims he raised and developed at his PCRA hearings in his reinstated direct appeal, along with his issue concerning his request to withdraw his guilty plea." Appellant's Motion to Waive PCRA Rights, 5/3/18, at 5-6. We conclude that the trial court did not abuse its discretion when it denied Appellant's motion.

In **Commonwealth v. Grant**, our Supreme Court held that, "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." **Commonwealth v. Grant**, 813 A.2d 726, 738 (Pa. 2002); **see also Commonwealth v. Harris**, 114 A.3d 1, 3-4 (Pa. Super. 2015) ("once a PCRA court determines that a petitioner's right to direct appeal has been violated, the PCRA court is precluded from reaching the merits of other issues raised in the petition. Rather, once the PCRA court finds that the petitioner's appellate rights have been abridged, it should grant leave to file a direct appeal and end its inquiry there") (quotations and

citations omitted). In **Commonwealth v. Holmes**, our Supreme Court held that "**Grant's** general rule of deferral to PCRA review remains the pertinent law on the appropriate timing for review of claims of ineffective assistance of counsel." **Commonwealth v. Holmes**, 79 A.3d 562, 563 (Pa. 2013). However, the **Holmes** Court recognized two exceptions to **Grant's** general rule of deferral:

> First, . . . there may be extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice; and we hold that trial courts retain their discretion to entertain such claims.
>
> Second, . . . where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.

**Id.** at 563-564 (citations and footnotes omitted).[22]

Appellant claims that the trial court erred when it refused to allow him to expressly waive his "entitlement to seek PCRA review from his conviction

---

[22] In **Commonwealth v. Delgros**, the Supreme Court recognized a third exception to **Grant's** general deferral rule. **Commonwealth v. Delgros**, 183 A.3d 352 (Pa. 2018). The **Delgros** Court held that trial courts must "address claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review." **Id.** at 361.

and sentence," so as to allow review of his ineffective assistance of counsel claims on direct appeal. Appellant's Brief at 44-54. According to Appellant, since he "raised and developed his ineffectiveness claims before the [trial] court, and the court conducted evidentiary hearings on those claims," he should be entitled to raise the claims on direct appeal. This claim fails.

Even in cases where one of the two *Holmes* exceptions to *Grant's* general rule of deferral are seemingly present, it is **solely within the trial court's discretion** to entertain – or refuse to entertain – the ineffectiveness claim. *See Holmes*, 79 A.3d at 563-564. As our Supreme Court has emphasized:

> When a court comes to a conclusion through the exercise of its discretion, there is a heavy burden to show that this discretion has been abused. It is not sufficient to persuade the appellate court that it might have reached a different conclusion, it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Absent an abuse of that discretion, we will not disturb the ruling of the trial court.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1140 (Pa. 2007) (citations omitted).

As the trial court explained, it refused to consider Appellant's ineffective assistance of counsel claims on direct appeal because, as it stands, the case has a "complex history" and the court did not wish to add to the "procedural complexity that surrounds the case." Trial Court Order, 5/9/18, at 1-2.

Simply stated, in light of the strange and convoluted facts of this case (and in light of Appellant's lengthy prison term), it cannot be said that the trial court's determination was "manifestly unreasonable" – and it certainly cannot be said that the determination was "the result of partiality, prejudice, bias or ill-will." *See id.* Therefore, we conclude that the trial court did not abuse its discretion when it denied Appellant's Motion to Waive PCRA Rights.

The trial court's April 28, 2016 order, denying Appellant's *pro se* Motion to Withdraw Guilty Plea, is vacated. Case remanded to allow Appellant to file a post-sentence motion *nunc pro tunc*. Jurisdiction relinquished.

President Judge Emeritus Bender, Judge Lazarus, Judge Kunselman, and Judge Nichols join this Memorandum.

Judge Murray files a Dissenting Memorandum which President Judge Panella, President Judge Emeritus Gantman and Judge McLaughlin join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  10/8/2019

- 38 -